**Ayman Nabil GHALY, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant.**

**No. 00 CIV.7991(JGK).**

United States District Court, S.D. New York.

Jan. 25, 2002.

Ayman Nabil Ghaly, Howard Beach, NT, Pro se.

Edward Chang, Asst. U.S. Attorney, United States Attorney, New York City, for Defendant.

## ORDER

KOELTL, District Judge.

The plaintiff, Ayman Nabil Ghaly, is employed by the United States Department of Agriculture ("USDA"), in the Animal Plant Health Inspection Service, Plant Protection Quarantine ("PPQ") at John F. Kennedy International Airport ("JFK") as a Plant Protection Technician. In his Second Amended Complaint, the plaintiff, proceeding *pro se*, alleges that the defendant retaliated against him in violation of the Whistleblower Protection Act of 1989, 5 U.S.C. § 1213 *et seq.*, and violated the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7513, and the Due Process Clause of the United States Constitution, U.S. Const. amend. V, by charging him with falsifying a number of time and attendance reports and transferring him from active duty to paid administrative-leave status pending a resolution of the charges without providing him with procedural safeguards that were allegedly due to him. The primary relief that the plaintiff originally sought was reinstatement to active status pending a decision on the charges. However, the defendant has concluded its investigation and dropped the charges against the plaintiff, who is now back on active duty. The plaintiff now seeks compensatory damages for lost overtime pay, damages for emotional distress and pain and suffering, and punitive damages.

There are currently two motions pending before the Court. The defendant moves to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiff moves pursuant to Rule 20(a) of the Federal Rules of Civil Procedure to add three additional co-workers to the case on the ground that their cases involve similar circumstances.

## I.

When considering a motion to dismiss, the Court " 'must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.' " *Gant v. Wallingford Bd. of Education,* 69 F.3d 669, 673 (2d Cir.1995) (considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)) (quoting *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir. 1994)). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, the defendant's present motion should only be granted if it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998); *see also Goldman,* 754 F.2d at 1065. Where, as here, the plaintiff is proceeding *pro se,* the Court must also "read the [plaintiff's] pleadings . . . liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (internal citation and quotations omitted).

In deciding the motion, the Court may consider documents referenced in the Second Amended Complaint and documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in bringing suit. *See Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir. 1991); *I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 762 (2d Cir.1991); *Skeete v. IVF America, Inc.,* 972 F.Supp. 206, 208 (S.D.N.Y.1997). The Court may also consider "matters of

which judicial notice may be taken." *See Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir.1999) (quotation omitted); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir.1991).

## II.

Unless otherwise indicated, the following facts are either undisputed, matters of public record, or set forth in the plaintiff's Second Amended Complaint and are accepted as true for the purposes of the defendant's motion to dismiss.

The plaintiff, Ayman Nabil Ghaly, is employed as a Plant Technician by the United States Department of Agriculture ("USDA"), the Animal Plant Health Inspection Service ("APHIS"), Plant Protection Quarantine ("PPQ") at John F. Kennedy International Airport ("JFK"). Until the events leading to the present action, his job has been to assist Plant Protection Quarantine officers in the inspection of passengers and passenger baggage at JFK.

On September 12, 2000, after conducting an internal investigation of the PPQ concerning allegations of overtime abuse, the defendant charged the plaintiff and eight of his co-employees with falsifying a number of time and attendance reports and provided them with notices of proposed removal. The defendant also transferred these nine employees from active to paid administrative-leave status pending a resolution of the charges.

On October 19, 2000, the plaintiff filed an initial complaint with this Court, alleging that the USDA brought the charges against him and transferred him to paid administrative-leave status (i) because of his color and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and (ii) without providing him with suffi-

cient notice, opportunity to be heard and other, related procedural safeguards. The plaintiff sought, among other things, a preliminary injunction directing the defendant to allow him to return to work.

On December 1, 2000, the Court denied the plaintiff's motion for a preliminary injunction. On May 31, 2001, the Court then dismissed the plaintiff's initial complaint in its entirety, without prejudice to repleading. The Court dismissed his Title VII claim because the plaintiff had abandoned it in his reply brief and had failed to exhaust his administrative remedies. The Court dismissed the plaintiff's procedural claims on the ground that the plaintiff had failed to identify any specific statutory provisions that the defendant had allegedly violated and had failed to amend his complaint specifically to include a due process claim as an independent cause of action. The Court also observed that to the extent that the plaintiff was relying on provisions from the CSRA for his procedural claims, the plaintiff had failed to exhaust his administrative remedies on these claims.

On May 14, 2001, the plaintiff filed an appeal with the Merit Systems Protection Board ("MSPB"), seeking to be returned to work pending a decision on the charges or an injunction directing the defendant to complete its investigation. At or around this time, the plaintiff filed a complaint with the United States Office of Special Counsel (the "OSC"), which raised substantially the same claims and sought substantially the same relief.

On June 18, 2001, while these other actions were pending, the plaintiff filed an amended complaint (the "Second Amended Complaint" or the "Complaint") with this Court based on the same set of factual allegations and claiming violations of Whistleblower Protection Act of 1989, 5 U.S.C. § 1213 *et seq.*, the Civil Service Reform

Act, 5 U.S.C. § 7513, and the Due Process Clause of the United States Constitution, U.S. Const. amend. V. The plaintiff sought primarily to be reinstated pending a resolution of the charges against him, though he also asked for whatever other relief the Court deemed appropriate. *See* Complaint at 5, 7. Three days later, the plaintiff moved to add three additional plaintiffs to the case, who had been been issued proposed notices of removal and had been placed on administrative leave as a result of the same internal investigation that had led to the charges against the plaintiff.

On June 26, 2001, the Chief Administrative Judge for the New York Field Office of the MSPB dismissed the plaintiff's MSPB appeal for lack of jurisdiction. *See Ghaly v. Department of Agriculture*, NY–0752–01–0237–I–1, slip op. (N.Y.M.S.P.B. June 26, 2001). The Administrative Judge explained that the plaintiff had failed to meet his burden of establishing by a preponderance of the evidence that his placement on administrative leave was a "suspension of more than 14 days," which was a necessary predicate to an appeal of the agency's action. *See id.* at 2–5.

On October 9, 2001, the OSC similarly dismissed the complaint that the plaintiff had brought before it. However, the OSC also notified the plaintiff that he had the right to appeal the decision insofar as it related to allegations of reprisals for whistleblowing. *See* Letter from Ellen M. Oskui, Complaints Examiner, OSC to Ayman N. Ghaly dated October 9, 2001. The letter of notification informed the plaintiff that he had 65 days from the date of the letter's issuance to file such an appeal. At oral argument before this Court, the plaintiff acknowledged that he has not filed any appeal of the OSC's decision.

The defendant subsequently completed its investigation into the charges against the plaintiff. By letter dated October 17, 2001, the defendant informed the plaintiff that the charges were being dropped, thus allowing him to return to active duty. *See* Letter from Jerry Fowler, Regional Director, USDA to Ayman N. Ghaly dated October 17, 2001, at 1. The letter nevertheless contained an official word of caution concerning the falsification of time reports. *See id.* at 2. The letter explained that "there is not the preponderance of evidence required to sustain the specifications, nor the Charge"; however, the letter also indicated that "there is considerable evidence in support of several instances of falsification" alleged in the proposed notice of removal. *Id.* at 1. The letter thus instructed the plaintiff to request and receive approval for any absences from his official work site during paid time at work. *Id.*

At oral argument on the present motions, both parties indicated that the plaintiff has returned to active duty. The plaintiff indicated that because of this change in status, he no longer seeks the relief of reinstatement, which formed the primary relief specified in his Complaint. The plaintiff also made it clear at oral argument that he was not pursuing any allegations of racial or ethnic discrimination in this action. He nevertheless still seeks compensatory damages for the lost overtime that he allegedly would have worked had he been on active duty during his investigation and administrative leave, damages for emotional distress and pain and suffering caused by the process, and punitive damages. Finally, the plaintiff seeks an injunction directing the defendant to remove the official letter of caution from the plaintiff's permanent file.

The defendant maintains its motion to dismiss the Complaint in its entirety.

## III.

The plaintiff argues that he is entitled to damages because he was placed on administrative leave in retaliation for a number of whistleblowing activities that he engaged in prior to September 12, 2000. The defendant argues that this claim should be dismissed because the plaintiff has failed to exhaust his administrative remedies on this claim.

The Civil Service Reform Act of 1978, as amended by the Whisteblower Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (codified at 5 U.S.C. § 2302(b)), governs claims for retaliation against whistleblowing activities brought by federal employees against their federal employers. As the Supreme Court has explained:

> Federal civil servants are now protected by an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures—administrative and judicial—by which improper action may be redressed. They apply to a multitude of personnel decisions that are made daily by federal agencies.

*Bush v. Lucas*, 462 U.S. 367, 385, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). With regard to retaliation for whistleblowing, the CSRA provides that:

> "[a]ny employee who has the authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority ... take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee ... because of ... any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences (i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial

and specific danger to the public health or safety .... "

5 U.S.C. § 2302(a), (b).

The CSRA, in turn, sets up an exclusive mechanism through which civil servants can challenge prohibited retaliatory personnel practices. *See Ugarte v. Johnson*, 40 F.Supp.2d 178, 181 (S.D.N.Y.1999). Such challenges must be raised first with the Office of Special Counsel, and then appealed, if at all, to the Merit Systems Protection Board ("MSPB"). *See* 5 U.S.C. § 1214(a)(1)(A), (a)(3); *Knollenberg v. MSPB*, 953 F.2d 623, 625 (Fed.Cir.1992). After exhausting these administrative remedies, employees who have been aggrieved by a final MSPB decision may seek judicial review. 5 U.S.C. § 1214(c)(1).

█ In this case, the plaintiff began the process of administrative review by bringing an action raising substantially the same claims and seeking substantially the same relief as in this case before the OSC. The OSC rejected the plaintiff's claims on October 17, 2001, and the plaintiff did not appeal this decision within the required 65–day time period. The plaintiff has therefore waived his right to seek any damages based on alleged violations of the Whistleblower's Protection Act of 1989, and this cause of action should be dismissed on this ground alone. *See, e.g., Weaver v. United States Info. Agency*, 87 F.3d 1429, 1433 (D.C.Cir.1996) ("Under CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite.").

█ In any event, even if the plaintiff had timely appealed the OSC's determination and had obtained a final decision from the MSPB, this Court would lack jurisdiction to hear the present claim. Challenges to a final MSPB decision on a claim of violations of the Whistleblower Protection Act of 1989 must be raised before the Court of Appeals for the Federal Circuit,

not here. *See* 5. U.S.C. § 1214(c)(2); 5 U.S.C. § 7703(b)(1); *see also Ugarte,* 40 F.Supp.2d at 181. This fact provides a second, independent and sufficient ground to dismiss this cause of action.[1]

## IV.

The plaintiff's argues that he is entitled to relief because he was transferred to paid-administrative leave status without following the procedural requirements set forth in 5 U.S.C. § 7513. The defendant argues that this Court lacks jurisdiction to hear this claim.

With regard to claims that do not involve the Whistleblower Protection Act of 1989, the CSRA establishes a three-tiered system for reviewing personnel actions involving federal employees:

> (1) for major personnel actions specified in the statute ("adverse actions"), direct judicial review after extensive prior administrative proceedings; (2) for specified minor personnel actions infected by particularly heinous motivations or disregard of law ("prohibited personnel practices"), review by the Office of Special Counsel, with judicial scrutiny "limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry;" and (3) for the specified minor personnel actions not so infected, and for all other minor personnel actions, review by neither OSC nor the courts.

*Carducci v. Regan,* 714 F.2d 171, 175 (D.C.Cir.1983).

## A.

■ The plaintiff argues that his placement on paid administrative leave was an "adverse action" within the meaning of the CSRA because Section 7512 defines the term as including both "a suspension for more than 14 days" and "a reduction in pay." 5 U.S.C. § 7512(2) & (4). The plaintiff argues that his placement on administrative leave for over one year meets both of these criteria. However, as the defendant correctly notes, the term "suspension" is defined in 5 U.S.C. § 7501(2) as "the placing of an employee, for disciplinary reasons, in a temporary status *without duties and pay.*" (Emphasis added.) The plaintiff's administrative leave with pay does not qualify as a "suspension" for CSRA purposes because the defendant received his ordinary salary during this period. *See also Oliver v. USPS,* 696 F.2d 1129, 1131–32 (5th Cir.1983) (per curiam) (finding that regulations create no right to remain on duty during removal proceedings).

The plaintiff argues next that he faced a reduction in pay because he did not receive overtime during this period of administrative leave, which allegedly amounted to over 60% of his prior income. However, Section 7511(a)(4) defines the term "pay" for CSRA purposes as the "rate of basic pay fixed by law or administrative action for the position held by the employee." 5 U.S.C. § 7511(a)(4). Thus, an employee's rate of pay does not include "additional pay of any kind." *Nelson v. FDIC,* 68 M.S.P.R. 1, 3 (M.S.P.B.1995), *aff'd,* 83 F.3d 1375, 1378–79 (Fed.Cir.1996); *see also McLaughlin v. USPS,* 55 M.S.P.R. 192, 197 (M.S.P.B.1992). The plaintiff has not alleged that his basic rate of pay changed in any way due to his placement on administrative leave, and the defendant's actions

---

**1.** The plaintiff's Complaint is ambiguous as to whether it raises a variant, Title VII retaliation claim based on alleged reprisals for protected activity related to alleged discriminatory activity. At oral argument, however, the plaintiff clarified that he has raised the Title VII variations of his retaliation claims with the EEO and that he does not raise those claims in the present action.

thus do not constitute an "adverse action" for which judicial review is available.

Even if the defendant's actions were to constitute an "adverse action," this Court would lack the jurisdiction to hear this cause of action. In the order to challenge an "adverse action" in federal court, a plaintiff must first obtain a final decision from the MSPB, which is only then subject to judicial review. *See, e.g., Downey v. Runyon,* 160 F.3d 139, 143–44 (2d Cir. 1998). Where, as here, the claims do not involve claims for discrimination that are covered by Title VII, the Court of Appeals for the Federal Circuit has exclusive jurisdiction to review the MSPB's determination. Thus, in no event would this Court have the jurisdiction to hear the present claim.

### B.

At most, the plaintiff thus alleges a "prohibited personnel practice," which is the second category of personnel actions covered by the CSRA. Such actions must be brought before the OSC, and "[j]udicial review . . . is limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry on which to base its dispositions of an employee's petition." *Tiltti v. Weise,* 155 F.3d 596, 601 (2d Cir.1998) (quotation marks omitted); *see also Carducci,* 714 F.2d at 175 n. 4; *Jarvis v. Cardillo,* No 98 Civ. 5793, 1999 WL 187205, at *4 (S.D.N.Y. Apr. 6, 1999).

The plaintiff has already raised before the OSC a number of procedural challenges to his placement on administrative leave, and the OSC rejected these challenges on the merits. The plaintiff does not allege that the OSC failed to perform an adequate inquiry on which to make this determination. He cannot make such an allegation now because he did not object to the OSC's proposed conclusions of law and findings of fact. The Court thus lacks jurisdiction to review the plaintiff's procedural claims based on violations of the CSRA.

### C.

In any event, the fact that the plaintiff's placement on paid administrative leave status was not an "adverse action" compels the conclusion that his procedural claims based on the CSRA should be dismissed on the merits. Section 7513 sets forth a number of procedural requirements that must be followed when making certain personnel decisions involving federal employees. Section 7513 is, however, limited by its express terms to the kinds of personnel actions specified in § 7512, and § 7512 does not include any of the kinds of actions about which the plaintiff complains. The plaintiff also was not entitled to the more minimal procedural protections set forth in 5 U.S.C. § 7503(b), which applies only to "suspensions for 14 days or less," *id.,* because he was not subject to a "suspension" within the meaning of the CSRA. The plaintiff has not identified any other provisions of the CSRA that would entitle him to the procedural protections he alleges were due to him. These facts provide a further, independent and adequate ground to dismiss the plaintiff's procedural claims based on the CSRA.

### V.

The plaintiff's final basis for relief is based on the allegation that the defendant violated his rights to due process by placing him on administrative leave without adequate notice and an opportunity to be heard. The Fifth Amendment to the United States Constitution provides that "no person shall be deprived of life, liberty, or property without due process of law."

## A.

The first issue with respect to this claim is whether the plaintiff's claim is covered by the CSRA's complex remedial scheme and jurisdictional predicates. The CSRA has a "catch-all" prohibition on personnel practices that violate the CSRA's merit principles, *see* 5 U.S.C. §§ 2301(b)(2), 2302(b)(11), and a number of courts have held that unconstitutional personnel actions violate these merit principles. *See, e.g., Weaver*, 87 F.3d at 1432; *Saul v. United States*, 928 F.2d 829, 834 (9th Cir. 1991); *Ferry v. Hayden*, 954 F.2d 658, 661 (11th Cir.1992). The CSRA's procedural requirements clearly apply to *Bivens*-type damages actions alleging unconstitutional personnel actions. *See, e.g., Bush*, 462 U.S. at 380–90, 103 S.Ct. 2404; *Ferry*, 954 F.2d at 661; *McIntosh v. Turner*, 861 F.2d 524, 526 (8th Cir.1988); *Dotson v. Griesa*, No. 99 Civ. 11713, 2001 WL 293962, at *4 (S.D.N.Y. Mar. 26, 2001); *Parola v. IRS*, No. 98–CV–7179, 1999 WL 1215557 (E.D.N.Y. Dec. 15, 1999).[2]

In light of these facts, the plaintiff's due process claim should be dismissed for the same reasons that his other procedural claims based on the CSRA should be dismissed. In particular, the plaintiff has failed to exhaust his administrative remedies on these claims and this Court would lack jurisdiction to hear them in any event.

## B.

■ Moreover, the petitioner has failed to establish that he has a valid due process claim. "In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest." *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1060–61 (2d Cir.1993) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)); *see also Bross v. Turnage*, 889 F.2d 1256, 1257 (2d Cir.1989).

The plaintiff argues that he had a protected property interest in maintaining active duty status while the defendant investigated the charges against him. To establish a property interest, the plaintiff must, however, show more than an abstract need or desire for it, and more than a unilateral expectation; he must instead show that he had a legitimate claim of entitlement, arising from some independent basis in law. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The plaintiff has not identified any provision in any agreement, statute or regulation governing his employment that granted him a right to maintain active duty status during an investigation into allegations of misconduct. Moreover, the plaintiff received his ordinary salary during this period. In these circumstances, the plaintiff was not been deprived of any interest that rises to the level of a protected property interest. *See, e.g., Watkins v. McConologue*, 820 F.Supp. 70, 72–73 (S.D.N.Y.), *aff'd*, 978 F.2d 706 (2d Cir.1992); *Weg v. Macchiarola*, 729 F.Supp. 328, 337, 339 (S.D.N.Y.1990).

■ There also is no merit to the plaintiff's argument that he had a property interest in overtime pay sufficient to trigger the protections of the Due Process Clause. The plaintiff alleges that he would have been able to work overtime if he had been on active duty status, but he does not

---

**2.** The Court of Appeals for the Second Circuit has not yet decided whether the CSRA precludes a direct action in federal district court seeking equitable relief with respect to a constitutional claim, and other Courts of Appeals are divided on that question. *See Tiltti*, 155 F.3d at 602. It is unnecessary to address this issue here because the plaintiff has abandoned his claims for equitable relief and now seeks only damages.

identify any contractual, regulatory or statutory provision that would have entitled him to work overtime. He cannot do so because a federal "agency's authority to assign overtime work to an employee is discretionary in nature" and "[n]o employee is guaranteed that overtime work will be available, and no employee is entitled to overtime assignments as a matter of right." *McLaughlin,* 55 M.S.P.R. at 198.

In sum, the plaintiff alleges no more than a unilateral expectation and need for overtime compensation, and not a protected property interest. His due process claim should be dismissed on this ground alone.[3]

### VI.

■ At oral argument, the plaintiff argued that the OSC inappropriately issued him an official letter of caution based on its investigations into the allegations of falsification of time records and attendance sheets. The plaintiff has not raised this claim in any administrative forum, and this claim must therefore be dismissed for failure to exhaust administrative remedies. In addition, the issuance of an official letter of caution is not, in itself, an "adverse action" or a "specified personnel practice" for which judicial review might be available. The Court would thus lack jurisdiction to hear this claim in any event.

### VII.

■ The plaintiff also moved to add three additional plaintiffs to this case pursuant to Rule 20(a) of the Federal Rules of Civil Procedure, which gives the Court the discretion to permit the joinder of plaintiffs who "assert any right to relief jointly, severally or in the alternative in respect of or arising out of the same transaction or series of transactions or occurrences." Fed.R.Civ.P. 20(a). However, the Second Circuit Court of Appeals has held that "a person ordinarily may not appear pro se in the cause of another person or entity." *Pridgen v. Andresen,* 113 F.3d 391, 393 (2d Cir.1997). The plaintiff's motion should be dismissed, as an initial matter, because of the plaintiff's pro se status.

In any event, district courts have broad discretion to decide whether joinder is appropriate, even when the requirements of Rule 20(a) have been met. *See Briarpatch Ltd. v. Pate,* 81 F.Supp.2d 509, 515 (S.D.N.Y.2000); *Abner Realty, Inc. v. Administrator of General Servs. Admin,* No. 97 Civ. 3795, 1998 WL 67663, at *9 (S.D.N.Y. Feb. 18, 1998). In this case, the three additional plaintiffs allege rights to relief that arise out of the same investigation into time sheet falsifications in the PPQ that led to the charges against the plaintiff. However, it is not clear that their cases are in the same procedural posture as the plaintiff's with regard to administrative exhaustion or whether their

---

**3.** The plaintiff also argues that his transfer to administrative leave status amounted to a deprivation of liberty because he was forced to stay at home during ordinary working hours to field telephone calls, and was thus allegedly placed on "house arrest" against his will. This argument is frivolous. The plaintiff was in an employment arrangement with the defendant, which entailed duties concerning his location during ordinary work hours. The defendant asked the plaintiff to remain at home available to receive calls only during these ordinary working hours, and the defen-

dant continued to pay him his full salary during the investigation. The plaintiff was free to take vacation time if he chose to be away from the place where he was expected to be during regular working hours. As with any other employment relation, the plaintiff was also free to terminate his employment he found these obligations too onerous. The plaintiff was no more under arrest than any other employee who is expected to be at a regular place of employment during regular working hours.

investigations culminated in the same reinstatement and whether their rights are governed by any settlement agreements that are inapplicable to the present case. It is also unclear whether they were placed on precisely the same kind of administrative leave with pay as the plaintiff, pending a resolution of the charges against them. It is similarly unclear whether they have any other related causes of action in their particular circumstances. Finally, it would be inequitable to bind these other parties by a judgment concerning the plaintiff when it is clear that the plaintiff's claim must be dismissed. Therefore, the Court would decline to exercise its discretion to permit joinder even if it were permissible. *See, e.g., Shaw v. Munford,* 526 F.Supp. 1209, 1213 (S.D.N.Y.1981) (noting that discretion in permitting joinder pursuant to Rule 20(a) should be exercised so as to comport with "the principles of fundamental fairness").

## VIII.

The Court has reviewed all of the plaintiff's other arguments and finds them to be either moot or without merit. The plaintiff has not raised any other bases for relief. For all of the foregoing reasons, the plaintiff's Complaint is dismissed in its entirety. The Clerk of the Court is directed to enter judgment and close this case.

**SO ORDERED.**